**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

**Chiara Ettorre,**
  *Plaintiff,*

**v.**

**Russo's Westheimer, Inc.**
  *Defendant.*

**Civil No. 4:19-cv-00245**

---

**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
AND INCORPORATED BRIEF IN SUPPORT**

---

## TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................................. i

TABLE OF AUTHORITY ......................................................................................................... ii

I.   INTRODUCTION ......................................................................................................... 1

II.  STATEMENT OF FACTS ........................................................................................... 2

  A.   FRCP 30(B)(6) DEPOSITION .................................................................. 2
  B.   DEFENDANT PAID ETTORRE A SUBMINIMUM HOURLY WAGE ................. 3
  C.   DEFENDANT VIOLATED THE FLSA TIP CREDIT ...................................... 3
  D.   DEFENDANT DID NOT ACT IN GOOD-FAITH ........................................... 4

III. SUMMARY JUDGMENT STANDARD ...................................................................... 4

IV.  ARGUMENTS AND AUTHORITIES .......................................................................... 5

  A.   DEFENDANT PAID ETTORRE A SUBMINIMUM HOURLY WAGE PLUS TIPS ........... 6

  B.   DEFENDANT CANNOT CLAIM A TIP CREDIT ...................................... 7

    1.   Defendant cannot prove that it provided Ettorre with the required notice of the Tip Credit .................................................................. 8
    2.   Defendant cannot prove the "linen fee" it took from Ettorre's wages complied with the Tip Credit ................................................................... 11
      i.   Even if the "linen fee" was lawful, Defendant still violated the Tip Credit because it deducted more than the reasonable cost .................. 14
  C.   DEFENDANT CANNOT PROVE IT ACTED IN GOOD-FAITH ......................... 17

V.   CONCLUSION ............................................................................................................ 18

i

## TABLE OF AUTHORITES

*Alverson v. BL Rest. Operations LLC*,
2017 U.S. Dist. LEXIS 188705 (W.D. Tex. 2017) ................................................................ 9

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)............................................................................................................ 5

*Barcellona v. Tiffany English Pub., Inc.*,
597 F.2d 464 (5th Cir. 1979) ..................................................................................... passim

*Bernal v. Vankar Enters.*,
579 F. Supp. 2d 804 (W.D. Tex. 2008) ...................................................................... passim

*Bonham v. The Cooper Cellar Corp.*,
476 F. Supp. 98 (E.D. Tenn. 1979) ..................................................................................... 6

*Brennan v. Veterans Cleaning Service, Inc.*,
482 F.2d 1362 (5th Cir. 1973) ...................................................................................passim

*Bursell v. Tommy's Seafood Steakhouse*,
2006 WL 3227334 (S.D. Tex. 2006) .................................................................................. 7

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ........................................................................................................... 5

*Chisolm v. Gravitas Restaurant, Ltd.*,
2008 WL 838760 (S.D. Tex. 2008) ......................................................................... 6, 7, 11

*Chu Chung v. New Silver Palace Rest.*,
246 F. Supp. 2d 220 (S.D.N.Y. 2002) .............................................................................. 11

*Copantitla v. Fiskardo Estiatorio*,
788 F. Supp. 2d 253 (S.D.N.Y. 2011) ................................................................................ 9

*DAC Surgical Partners P.A. v. United Healthcare Servs.*,
2016 U.S. Dist. LEXIS 169494 (S.D. Tex. 2016) .............................................................. 2

*Dole v. Bishop*,
740 F. Supp. 1221 (S.D. Miss. 1990) .............................................................................. 16

*Donovan v. New Floridian Hotel, Inc.*,
676 F.2d 468 (11th Cir. 1982) ........................................................................................ 16

*Gustavos v. Cazos, Inc.*,
774 F. Supp. 2d 856 (S.D. Tex. 2011) ....................................................................... 10, 11

*Harrell v. Diamond A Entm't., Inc.*,
992 F. Supp. 1343 (M.D. Fla. 1997) ............................................................... 6

*Herman v. Collis Foods, Inc.*,
176 F.3d 912 (1999) ............................................................................................ 13

*Hernandez v. Jrpac Inc.*,
2016 WL 3248493 (S.D.N.Y. 2016) .................................................................. 9

*Howard v. Second Chance Jai Alai LLC*,
2016 WL 3883188 (M.D. Fla. 2016) ................................................................. 9

*Inclan v. N.Y. Hosp. Grp., Inc.*,
95 F. Supp. 3d (S.D.N.Y. 2015) ......................................................................... 8

*Little v. Liquid Air Corp.*,
37 F.3d 1069 (5th Cir. 1994) ............................................................................. 5

*Lu v. Jing Fong Rest., Inc.*,
503 F.Supp.2d 706 (S.D.N.Y. 2007) ................................................................ 11

*Martin v. Tango's Restaurant, Inc.*,
969 F. 2d 1319 (1st Cir. 1992) .......................................................................... 11

*Mayhue's Super Liquor Stores, Inv. V. Hodgson*,
464 F.2d 1196 (5th Cir. 1972) .......................................................................... 11

*Montano v. Montrose Rest. Assocs.*,
800 F.3d 186 (5th Cir. 2015) ............................................................................. 5

*Myers v. Copper Cellar Corp.*,
192 F.3d 546 (6th Cir. 1999) ............................................................................ 13

*Nail v. Shipp*,
2019 U.S. Dist. LEXIS 132072, at *22 (S.D. Ala. 2019).................................. 12, 14, 16, 17

*Pedigo v. Austin Rumba, Inc.*,
722 F. Supp. 2d 714 (W.D. Tex. 2010) .................................................... 7, 8, 10

*Reich v. Priba Corp.*,
890 F. Supp. 586 (N.D. Tex. 1995) .............................................................. 8, 11

*Shultz v. Hinojosa*,
432 F.2d 259 (5th Cir. 1970) ....................................................................... 12, 16

iii

*Singer v. City of Waco*,
324 F.3d 813 (5th Cir.2003) ................................................................................. 18

*Smith v. Noso, Inc.*,
2007 WL 2254531 (M.D. Fla. 2007) .................................................................. 19

*Solis v. Lorraine Enterprises*,
907 F. Supp. 2d 186 (D.P.R. 2012) .................................................................... 14

*Steele v. Leasing Enters.*,
826 F.3d 237 (5th Cir. 2016) ....................................................................... *passim*

*Super Future Equities, Inc. v. Wells Fargo Bank Minn.*,
 2007 WL 4410370 (N.D. Tex. 2007) ................................................................... 2

*Tran v. Thai*, No. H-08-3650,
2010 WL 5232944 (S.D. Tex. 2010) .................................................................. 18

*Trugreen Landcare, L.L.C. v. Scott*,
512 F.Supp.2d 613 (N.D. Tex. 2007) ................................................................... 5

*U.S. v. Whatley*,
1987 WL 9912 (S.D. Tex. 1987) ....................................................................... 12

*Walton v. United Consumers Club, Inc.*,
786 F.2d 303 (7th Cir.1986) ............................................................................... 17

*Weaver v. CAA Indus., Inc.*,
529 F.3d 335 (5th Cir. 2008) ............................................................................... 5

*Yu G. Ke v. Saigon Grill, Inc.*,
595 F. Supp. 2d 240 (S.D.N.Y. 2008) ............................................................... 16

## Statutes & Regulations

Fed. R. Civ. P. 56 ................................................................................................... 5
29 C.F.R. § 516 ............................................................................................... 14, 17
29 C.F.R. § 531 ..........................................................................................*passim*
29 U.S.C. § 203 .......................................................................................... *passim*
29 U.S.C. § 206 ............................................................................................ 1, 5, 8
29 U.S.C. § 216 ................................................................................................... 17
29 U.S.C. § 260 ................................................................................................... 18

**Secondary Sources**

76 Fed. Reg. 18844 ................................................................................................... 9

DOL Wage & Hour Opinion Letter,
2006 WL 1910966 (June 9, 2006) ........................................................................... 11

U.S. Dep't of Labor, Wage and Hour Div., Fact Sheet #16: Deductions from
Wages for Uniforms and Other Facilities Under the Fair Labor Standards Act (FLSA)
(rev. July 2009), available *at* https://www.dol.gov/whd/regs/compliance/whdfs16.htm
(last visited August 21, 2019) ................................................................................ 12

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| **Chiara Ettorre,** | |
| *Plaintiff,* | |
| **v.** | **Civil No. 4:19-cv-00245** |
| **Russo's Westheimer, Inc.** | |
| *Defendant.* | |

**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**
**AND INCORPORATED BRIEF IN SUPPORT**

## I.   INTRODUCTION

Chiara Ettorre ("Ettorre") worked as a server for Russo's Westheimer, Inc. ("Defendant") in Houston, Texas from on or about July 1, 2016 until December 23, 2018. During her employment, Defendant paid Ettorre an hourly wage of $2.13 per hour, which is less than the full minimum wage of $7.25 per hour as required by Section 206 of the Fair Labor Standards Act ("FLSA"). *See* 29 U.S.C. § 206. Under limited circumstances, an employer may pay tipped employees a subminimum wage pursuant to Section 203(m) (the "tip credit"); however, Defendant cannot rely on the tip credit as an affirmative defense[1] to the payment of the full minimum wage because it cannot prove (1) it provided Ettorre notice of the tip credit; or (2) the ten dollar ($10) "linen fee" Defendant took from Ettorre's wages each pay period complied with the tip credit. *See* 29 U.S.C. § 203(m). Since Defendant cannot satisfy the elements of the tip credit, Defendant

---

[1] Defendant has not plead Section 203(m) as an affirmative defense to the payment of the full minimum wage (i.e. $7.25) cited in Section 206.

1

cannot rely on tips to bring Ettorre's effective hourly wage up to the full minimum wage. Therefore, Defendant violated Section 206 as a matter of law by paying Ettorre an hourly wage less than $7.25 per hour. Defendant also cannot prove that its pay practices were done in "good faith" and therefore is liable for liquidated damages.

## II.     STATEMENT OF FACTS

### A. *FRCP 30(b)(6) Deposition*

Defendant presented Lynn Zeller as its Federal Rule of Civil Procedure 30(b)(6) designee to testify as to the topics Ettorre designated in the deposition notice. *See* Ex A (Notice of Corp. Rep. Depo.) Generally, Defendant designated Lynne Zeller to testify on behalf of Defendant for the time period from January 23, 2016 through July 12, 2019[2] regarding the topics identified in the notice. *Id.* at App. 4-5 (e.g. the linen fee, including the purpose of the linen fee and the amount and calculation of the linen fee, the types and amounts of compensation Ettorre was paid, and any efforts Defendant engaged in to determine whether its pay practices complied with the FLSA.) As the designated corporate representative for Defendant on each of the topics identified in the deposition notice, Ms. Zeller's testimony is binding on Defendant concerning each topic that she testified about including any answer where she disclaimed knowledge on any of the designated topics. *See DAC Surgical Partners P.A. v. United Healthcare Servs*., 2016 U.S. Dist. LEXIS 169494 at *12 (S.D. Tex. 2016) (holding that a subsequent declaration contradicting 30(b)(6) testimony was prohibited and should be stricken) (*citing Super Future Equities, Inc. v. Wells Fargo Bank Minn.,* 2007 WL 4410370, at *8 (N.D. Tex. 2007) ("Federal courts have interpreted [Rule

---

[2] The scope of the designated topics explicitly covered the three (3) year period preceding the filing of this lawsuit through the date of the deposition (i.e. from January 23, 2016 through July 12, 2019). *See* Ex A (Notice of Corp. Rep. Depo.) at App. 3.

30(b)(6)] as prohibiting a 30(b)(6) representative from disclaiming the corporation's knowledge of a subject at the deposition and later introducing evidence on that subject.")

### B. *Defendant paid Ettorre a subminimum hourly wage.*

Defendant stipulates that the FLSA applies to this dispute. *See* Ex B (Stipulation of FLSA Coverage) App. 6-7. Defendant employed Ettorre as a server at Defendant's restaurant located in Houston, Texas from approximately July 1, 2016 to December 23, 2108. *See* Ex C (Def's Payroll Records) App. 18, 25; Ex D (Ettorre Declaration) App. 28 ¶ 2. During the entire time Ettorre worked as a server, Defendant paid her $2.13 per hour plus tips. *See* Ex E (Depo of Corp. Rep.) App. 39:16-22; Ex C (Def's Payroll Records) App. 8-10; Ex D (Ettorre Declaration) App. 28 ¶ 2; Ex F (Depo of Chiara Ettorre) at App. 68 at page 30:4-5.

### C. *Defendant violated the FLSA Tip Credit*

To the extent Defendant intends to rely on the tip credit, Defendant has not plead the tip credit as an affirmative defense to its obligation to pay Ettorre the full minimum wage. *See* [Dkt 9] (Def's Answer to Pl's Amend. Compl.) In fact, not only does Defendant not plead the tip credit, Defendant affirmatively denies utilizing the tip credit. *Compare* [Dkt. 9] (Def's Answer to Pl's Amend. Compl.) ¶ 33 *with* [Dkt. 6] (Pl's Amend. Compl.) ¶ 33.

However, assuming *arguendo* that Defendant intends to rely on the tip credit as a defense, Defendant failed to inform Ettorre of the tip credit provisions, including how much she would be paid. *See* Ex E (Depo of Corp. Rep.) App. 39:8-15, App. 40:15-25, and App. 49-50:17-1; Ex D (Ettorre Declaration) App. 28 ¶ 3. Second, during each and every pay period, Defendant deducted ten dollars ($10) for a "linen fee" from Ettorre's wages. *See* Ex E (Depo of Corp. Rep.) at App. 48:18-21, App. 49:6-10, and App. 50:15-17; Ex C (Def's Payroll Records) App. 8-10; Ex D (Ettorre Declaration) App. 28 ¶ 4. Third, Defendant lacks any evidence to support a lawful reason

for taking ten dollars ($10) from Ettorre's wages each pay period. *See* Ex E (Depo of Corp. Rep.) App. 47:6-10 and App. 55:1-15. Defendant admits that the linen fee was used, in part, for laundering the restaurant's linens such as napkins, aprons, and towels. *See* Ex E (Depo of Corp. Rep.) App. 44-45:17-3, App. 46-47:14-3. In addition to the deduction covering the cost of the restaurant's linens, Defendant also avers that the "linen fee" covered the cost of some fountain drinks that employees consumed. *See* Ex E (Depo of Corp. Rep.) App. 44:17-22.

However, Defendant lacks records supporting the cost of the linens or the cost any fountain drink consumed by Ettorre during her employment. *See* Ex E (Depo of Corp. Rep.) App. 45-46:8–11 ("And I don't know how much it cost to clean the aprons."); *Id.* App. 47:6-10 (testifying there is no way to figure out how much it cost to clean Ettorre's apron); *Id.* App. 50:2-17 and App. 57:22-25 (testifying that Defendant does not know the number of drinks Ettore consumed or the cost of providing those drinks). Moreover, Ettorre rarely consumed fountain drinks during her employment. *See* Ex D (Ettorre Declaration) App. 29 ¶ 6; Ex F (Depo of Chiara Ettorre) at App. 67 at page 27:9-18. Finally, Defendant does know how it arrived at the amount of $10 for the linen fee it took from Ettorre's wages. *See* Ex E (Depo of Corp. Rep.) App. 55:2-15 and 58:1-21.

## D. *Defendant did not act in Good-Faith*

Defendant has no evidence to support any contention that it acted in good-faith and on reasonable grounds regarding the wage policies at issue. *See* Ex E (Depo of Corp. Rep.) App. 58:1-21 (testifying that company does not know whether it received any advice, nor has it seen any written advice regarding the legality of the $10 deduction).

## III.   SUMMARY JUDGMENT STANDARD

Summary judgment should be rendered if a party "show[s] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce

admissible evidence to support the fact." Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Weaver v. CAA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008).

To obtain summary judgment on an affirmative defense, as to which a plaintiff will not have the burden of proof at trial, plaintiff can meet her summary judgment obligation by pointing the court to the absence of evidence to support the affirmative defense in question. *See Celotex Corp.*, 477 U.S. at 322-23. Once a plaintiff does so, a defendant must go beyond their pleadings and designate specific facts showing that there is a genuine issue for trial. *See Id.* at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). An issue is genuine if the evidence is such that a reasonable jury could return a verdict in favor of defendants. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The failure of defendant to produce proof as to any essential element renders all other facts immaterial. *See Trugreen Landcare, L.L.C. v. Scott*, 512 F.Supp.2d 613, 623 (N.D. Tex. 2007).

## IV.    ARGUMENTS AND AUTHORITIES

Section 206 of the FLSA requires employers to pay employees minimum wage of $7.25 per hour. 29 U.S.C. § 206. However, under limited circumstances, an employer may pay "tipped employees" as little as $2.13 per hour by taking a credit against the minimum wage by utilizing a portion of the employee's tips in an amount not to exceed $5.12 per hour. *See* 29 U.S.C. § 203(m); *see also Bernal v. Vankar Enters.*, 579 F. Supp. 2d 804, 807 (W.D. Tex. 2008). "The employer carries the burden to prove its entitlement to the tip credit." *Steele v. Leasing Enters.*, 826 F.3d 237, 242 (5th Cir. 2016) (*citing Montano v. Montrose Rest. Assocs.*, 800 F.3d 186, 189 (5th Cir. 2015)).

Defendant paid Ettorre $2.13 per hour plus tips, which is less than full minimum wage of $7.25 per hour as required by Section 206. Therefore, in order to comply with the minimum wage

cited in Section 206, Defendant must claim a tip credit against Defendant's minimum wage obligation. In order to claim a tip credit, Defendant must prove each element of the tip credit. However, Defendant cannot prove that it complied with the tip credit provisions, because Defendant cannot prove that it 1) provided Ettorre notice of the tip credit provisions; or 2) allowed Ettorre to retain all of the tips she earned. Finally, Defendant cannot prove that it acted in good-faith and therefore Plaintiff is entitled to an award of liquidated damages as a matter of law.

### A.    DEFENDANT PAID ETTORRE A SUBMINIMUM HOURLY WAGE PLUS TIPS

The FLSA requires employers to pay employees a minimum wage of at least $7.25 per hour. 29 U.S.C §206; *Steele*, 826 F.3d at 242 (the FLSA "mandates that employers pay employees a minimum wage of $7.25 per hour" unless employer can satisfy the elements of the tip credit defense) (citations omitted). The amount an employee earned *after* the accounting of tips received is effectively irrelevant to the determination of whether an employer complied with the FLSA. *Chisolm v. Gravitas Restaurant, Ltd.*, 2008 WL 838760 (S.D. Tex. 2008) (holding that even if tips actually received exceed the amount of the tip credit the employer claimed toward payment of the minimum wage, these excess tips are not deemed to be "wages" for purposes of the FLSA.); *see also Bernal*, 579 F. Supp. 2d at 807 (citing 29 U.S.C. § 203(m)) (characterizing defendant's argument that tips and direct wages equaled or exceeded the applicable minimum wage as "a misreading of the FLSA's Tip Credit provision . . . ."); *Harrell v. Diamond A Entm't., Inc.*, 992 F. Supp. 1343, 1357-58 (M.D.  Fla. 1997) (employer still had obligation under the FLSA to pay minimum wage despite plaintiffs receiving as much as $1,000.00 per week in tips); *Bonham v. The Cooper Cellar Corp*., 476 F. Supp. 98, 102 (E.D. Tenn. 1979) (employer violated the FLSA minimum wage "despite [the] plaintiff's admissions that their actual income, including tips, greatly exceeded the minimum wage for the relevant period").

Here, Defendant employed Ettorre as a server and paid her a subminimum hourly wage of $2.13 per hour plus tips. *See* Ex E (Depo of Corp. Rep.) App. 38:12-13; Ex C (Def's Payroll Records) App. 8-10; Ex D (Ettorre Declaration) App. ¶ 2. Unless Defendant can rely on tips Ettorre received, Defendant violated Section 206 as a matter of law because it paid Ettorre an hourly wage that was less than the full minimum wage of $7.25 per hour.

## B.   DEFENDANT CANNOT CLAIM A TIP CREDIT

An employer may "pay tipped employees an hourly rate less than the federal minimum wage, by allowing them to credit a portion of the actual amount of tips received by the employee against the required hourly minimum wage." *Bursell v. Tommy's Seafood Steakhouse*, 2006 WL 3227334 at *1 (S.D. Tex. 2006). "In other words, [under 29 U.S.C. § 203(m),] the employer may take credit for an employee's tips to make up the difference between the cash wage of $2.13 [the employer] pays and the minimum wage [employer] owes its wait staff." *Chisolm*, 2008 WL 838760 at *2.

Moreover, the burden to prove compliance with the tip credit remains with the employer even under the procedural burdens of summary judgment. *See, e.g., Pedigo v. Austin Rumba, Inc*., 722 F. Supp. 2d 714, 723-24 (W.D. Tex. 2010) (summary judgment warranted where defendant failed to inform employees of the tip credit provision); *Bernal,* 579 F. Supp. 2d at 804 (concluding summary judgment was proper because employer did not inform employees of Section 203(m) provisions and it failed to rebut allegations it deducted for cash register losses).

Here, it is undisputed that Defendant cannot prove compliance with the tip credit, as 1) Defendant has failed to assert the tip credit as an affirmative defense and, in fact, 2) Defendant denies relying on tips to supplement Ettorre's subminimum wages. *Compare* [Dkt. 6] (Pl's Amend. Compl.) at pg. 10-11 ¶ 33 *with* [Dkt 9] (Def's Answer to Pl's Amend. Compl.) at pg. 6 ¶ 33-35. Because Defendant admits that it was not relying on tips and therefore the tip credit to supplement

Ettorre's subminimum hourly wage, Defendant has failed to pay Ettorre the full minimum wage pursuant to Section 206 as discussed above.

Even if Defendant wanted to, Defendant cannot properly claim the tip credit because it does not satisfy the tip credit requirements under the FLSA. 29 U.S.C. § 203(m). An employer may only take advantage of the Section 203(m) tip credit if: (1) the employer provides adequate notice of the FLSA's tip credit provision, and (2) the employer allows the employee to keep all earned tips. *See* 29 U.S.C. §203(m); *see also Steele*, 826 F.3d at 242. "If an employer fails to meet both prerequisites it is not eligible to take the tip credit and must pay each employee the full minimum wage required under 29 U.S.C. § 206." *Pedigo,* 722 F. Supp. 2d at 724 (quoting *Bernal*, 2008 WL 791963 at *2); *see also., Reich v. Priba Corp.*, 890 F. Supp. 586, 595-96 (N.D. Tex. 1995).

1. **DEFENDANT CANNOT PROVE THAT IT PROVIDED ETTORRE WITH THE REQUIRED NOTICE OF THE TIP CREDIT**

The employer bears the burden of showing that it satisfied the notice requirement by, for example, "providing employees with a copy of § 203(m) and informing them that their tips will be used as a credit against the minimum wage as permitted by law." *See Inclan v. N.Y. Hosp. Grp., Inc.*, 95 F. Supp. 3d 490, 497 (S.D.N.Y. 2015) (internal citation omitted). An employer must give employees advance notice of its intent to compensate employees pursuant to the tip credit. 29 U.S.C. §203(m); 29 C.F.R. § 531.59.  Effective May 5, 2011, the Department of Labor amended its tip-credit regulations to outline more specific requirements for the notice employers must provide to tipped employees about the tip credit. *See* 29 C.F.R. § 531.59. An employer is not eligible to take the tip credit unless it has informed its employees prior to taking a tip credit of:

1. the amount of the cash wage that is to be paid to the tipped employee by the employer;

2. the additional amount by which the wages of the tipped employee are increased on account of the tip credit claimed by the employer;

3. the tip credit may not exceed the value of the tips actually received by the employee;

4. that all tips received by the tipped employee must be retained by the employee except for a valid tip pooling arrangement limited to employees who customarily and regularly receive tips; and

5. that the tip credit shall not apply to any employee who has not been informed of these requirements in this section.

*See* 29 C.F.R. § 531.59. The amended regulations require more specific notice than the notice that courts previously required. *See* 76 Fed. Reg. 18844 (Apr. 5, 2011) ("To the extent that ... courts have reached different results, the Department notes that those courts generally failed to consider the important legislative developments underlying the FLSA's tip credit provisions and we choose to not be guided by those decisions in this revision of the regulations."). For example, courts previously did not require employers to specifically notify employees of the amount of the tip credit or that they were entitled to retain all tips except for a valid tip pooling arrangement. *Alverson v. BL Rest. Operations LLC*, 2017 U.S. Dist. LEXIS 188705, at *13 (W.D. Tex. 2017) (finding it unclear whether employer's tip credit "notification policy, even if followed, would have been compliant with amended rule 29 C.F.R. § 531.59(b)."); *see also*, *Howard v. Second Chance Jai Alai LLC*, 2016 WL 3883188, at *2 (M.D. Fla. 2016) (discussing the "five distinct disclosure requirements" of the 2011 regulation).

Merely informing employees that they are receiving tips in addition to their hourly wage fails to satisfy the requirement to inform the employees "that [the employer] intended to take a tip credit with respect to their salary." *Copantitla v. Fiskardo Estiatorio*, 788 F. Supp. 2d 253, 288 (S.D.N.Y. 2011); *see also Hernandez v. Jrpac Inc*., 2016 WL 3248493, at *24 (S.D.N.Y. 2016) (granting a plaintiff's partial motion for summary judgment because while the employees "were informed that they would be paid a fixed weekly wage and tips . . .[the employer] never informed

9

the employees that it intended to use the tips the workers received to satisfy any part of its minimum wage obligations").

Defendant failed to give Ettorre notice of the tip credit provisions as required by the FLSA. *See* 29 U.S.C. § 203; 29 C.F.R. § 531.59. Moreover, Defendant admits that it is unaware if Ettorre was even told how much she would be paid. *See* Ex E (Depo of Corp. Rep.) App. 39:8-15. (testifying that company does not know how much Ettorre was told she would be paid). Defendant has provided no evidence that Ettorre ever received any notice of the tip credit. *See* Ex E (Depo of Corp. Rep.) App. 39:8-15, App. 40:15-25, App. 41:1-3, and App. 49-50:17-1 (testifying that company does not know if Ettorre was told anything about tip credit during her employment or that she would be paid $2.13 per hour).

Though it would not satisfy each of the notice requirements, here, there is no evidence that Defendant even informed Ettorre that she would receive tips in addition to her hourly wage. *See Bernal*, 579 F. Supp. 2d at 810 ("The Court cannot say that any reasonable juror would find that Defendants disclosed their intention [to treat tips as satisfying their minimum wage obligations] on the face of the pay stubs or reprinted checks."); *see also, Gustavos v. Cazos, Inc*., 774 F. Supp. 2d 856, 858 (S.D. Tex. 2011) (informing employees that they would be paid an hourly wage plus tips, without more, was insufficient to satisfy the notice requirement); *see Pedigo*, 722 F. Supp. 2d (request by employees on job application for " $2.13 per hour plus tips " was not adequate notice; at best, it showed employees were familiar with common restaurant industry practice).

Because Defendant can provide no  evidence that it provided Ettorre with notice of each of the tip credit notice requirements, Ettorre moves for summary judgment based upon Defendant's failure to adhere to the FLSA's notice requirements.[3] *See Bernal,* 579 F.Supp.2d at 807 (granting

---

[3] An employer who fails to inform its employees of the requirements of Section 3(m) violates the FLSA's minimum wage requirement "even where the employees were, in fact, paid the minimum wage

summary judgment to restaurant employees where employer failed to prove it informed tipped employees of the FLSA's tip credit provisions); *Gustavus*, 774 F. Supp. 2d at 858 (same); *Barcellona v. Tiffany English Pub., Inc.*, 597 F.2d 464, 467–78 (5th Cir. 1979). As one court held, "[i]f the penalty for omitting notice appears harsh, it is also true that notice is not difficult for the employer to provide." *Martin v. Tango's Restaurant, Inc.*, 969 F. 2d 1319, 1323 (1ˢᵗ Cir. 1992).

### 2. DEFENDANT CANNOT PROVE THE "LINEN FEE" IT TOOK FROM ETTORRE'S WAGES COMPLIED WITH THE TIP CREDIT

In addition to its failure to provide the requisite notice, Defendant cannot claim the FLSA tip credit as an affirmative defense because it unlawfully deducted a linen fee from Ettorre's wages.[4] "The FLSA does not permit an employer to transfer to its employees the responsibility for the expenses of carrying on an enterprise." *Reich*, 890 F. Supp. at 596 (*citing* 29 C.F.R. § 531.3(d)(2); 29 C.F.R. § 531.32(c)); *see also e.g., Steele*, 2010 WL 4027717 at *3, aff'd 826 F.3d 237, 244-46 (5ᵗʰ Cir. 2016) (holding that employer may not transfer standard operating costs of running a business upon its tipped employees); *Chisolm*, 2008 WL 838760 at *4 (holding that a $1 per shift glass-breakage fee violated the tip credit). "Any arrangement whereby a tipped employee agrees that part of his or her tips become the property of the employer is inconsistent" with the FLSA's tip credit provisions. *See* DOL Wage & Hour Opinion Letter, 2006 WL 1910966 (June 9, 2006); *see Barcellona*, 597 F.2d at 467.

---

once their tips were taken into account." *See Bernal*, 579 F. Supp. 2d at 807 (W.D. Tex. 2008) (*citing Lu v. Jing Fong Rest., Inc.,* 503 F.Supp.2d 706, 711 (S.D.N.Y. 2007)); *Chu Chung v. New Silver Palace Rest.,* 246 F. Supp. 2d 220, 229 (S.D.N.Y. 2002).

[4] For purposes of complying with the tip credit, it makes no difference whether the deduction was taken from Ettorre's wages or tips, because either way the deduction violates the tip credit because it either reduces Ettorre's hourly wage below $2.13 or is a retention of tips. *See Mayhue's Super Liquor Stores, Inv. V. Hodgson*, 464 F.2d 1196, 1199 (5ᵗʰ Cir. 1972); *Chisolm*, 2008 WL 838760, at *3.

Defendant testified that the linen fee was taken from Ettorre's wages to cover the expense of laundering aprons and supplying fountain drinks.[5] *See* Ex E (Depo of Corp. Rep.) App. 44-45:17-3 and App. 46-47:14-3. However, it is a violation of Section 203(m) for Defendant to allocate any portion of the linen fee taken from Ettorre's wages to cover the expense of laundering aprons. The cost of furnishing "uniforms ***and of their laundering***" is an expense that is "primarily for the benefit or convenience of the employer [and] will not be recognized as reasonable." 29 C.F.R. § 531.3(d)(2) (emphasis added); *Shultz v. Hinojosa*, 432 F.2d 259, 266 (5th Cir. 1970) (citing 29 C.F.R. § 531.3(d)(1) and (d)(2)); *see also Nail v. Shipp*, 2019 U.S. Dist. LEXIS 132072, at *22 (S.D. Ala. 2019); U.S. Dep't of Labor, Wage and Hour Div., Fact Sheet #16: Deductions from Wages for Uniforms and Other Facilities Under the Fair Labor Standards Act (FLSA) (rev. July 2009), available *at* https://www.dol.gov/whd/regs/compliance/whdfs16.htm (last visited September 2, 2019) ("[I]f the wearing of a uniform is required . . . by an employer, the cost and maintenance of the uniform is considered to be a business expense of the employer. If the employer requires the employee to bear the cost, it may not reduce the employee's wage below the minimum wage of $7.25 per hour. . .")

Defendant required Ettorre to wear a uniform that consisted, in part, of an apron. *See* Ex D (Ettorre Declaration) App. 29 ¶ 5; Ex E (Depo of Corp. Rep.) App. 51:2-13; Ex F (Depo of

---

[5] Moreover, Defendant failed to respond to the allegations set forth in Paragraph 35 of Plaintiff's First Amended Complaint, stating:

"[I]t was Defendants' pattern and practice to deduct a fee from Ms. Ettorre's wages that Defendants used to pay for the expense of cleaning the restaurant's linens (e.g. table cloths and linen napkins). Defendants deducted this linen fee from Ms. Ettorre's paychecks on a consistent basis throughout her employment and at both locations that Ms. Ettorre worked at."

*See* [Dkt 6] (Pl's Amend. Compl.) at ¶ 35; c.*f.* [Dkt 9] (Def's Answer to Pl's Amend. Compl.) at ¶ 33-35. Therefore, this fact is also established because the failure to deny a contested fact deems the fact admitted. *U.S. v. Whatley*, 1987 WL 9912 at *1 (S.D. Tex. 1987).

Chiara Ettorre) App. 67 at page 28:1-5; [Dkt. 15] (Def's Statement of Compliance).  Defendant then took ten dollars ($10) from Ettorre's wages each pay period for a "linen fee" that went to cost of laundering the apron Defendant required Ettorre to wear. *See* Ex E (Depo of Corp. Rep.) App. 47-48:20-1; Ex C (Def's Payroll Records) App. 8-10.  Defendant violated the tip credit as a matter of law because it deducted the cost of laundering the apron from Ettorre's wages.

However, even if it were permissible under the FLSA for Defendant to deduct for the cost of laundering Ettorre's apron, Defendant failed to accurately account for the deduction and therefore the deduction is still illegal and still violates the FLSA. *Brennan v. Veterans Cleaning Service, Inc.*, 482 F.2d 1362, 1370 (5th Cir. 1973) (*citing* 29 C.F.R. § 531.40(a)). Stated differently, Defendant must prove the total cost of any *permissible* deduction did not enrich it, but instead, at most, merely restored it to the approximate financial posture it would have occupied if it had not taken a deduction. *Myers v. Copper Cellar Corp.*, 192 F.3d 546, 554-55 (6th Cir. 1999); *see also Herman v. Collis Foods, Inc.*, 176 F.3d 912, 918 (1999) (recognizing "the FLSA's policy of preventing employers from exploiting § 203(m) deductions for profit.").

The linen fee deduction was taken from Ettorre's wages each pay period regardless of the number of hours she worked, the number of shifts she worked, and whether or not she left her apron at the restaurant for laundering services. *See* Ex C (Def's Payroll Records) App. 8-10; *See* Ex E (Depo of Corp. Rep.) at 21:18-22:10; Ex C (Def's Payroll Records); Ex D (Ettorre Declaration) at ¶ 5. For instance, during 2018 Ettorre worked as few as five (5) shifts totaling 23.48 hours (during pay period 12/17/2018 through 12/30/2018) and as many as thirteen (13) shifts totaling 65.89 hours (during pay period 2/12/2018 through 2/25/2018). *See* Ex C (Def's Payroll Records) App. 8, 13-14, and 18. However, regardless of the number of hours or shifts worked, Defendant still took the $10 linen fee from her wages. *See* Ex C (Def's Payroll Records) App. 8.

13

Similar to *Veterans Cleaning*, Defendant admits that it cannot differentiate or properly allocate the amount of the "linen fee" that was for laundering the apron and the portion that was for fountain drinks. *See* Ex E (Depo of Corp. Rep.) App. 45-46:8–11 ("And I don't know how much it cost to clean the aprons."); App. 47:6-10 (testifying there is no way to figure out how much it cost to clean Ettorre's apron); App. 50:2-17 and App. 57:22-25 (testifying that Defendant does not know the number of drinks Ettore consumed or cost of providing those drinks). In other words, Defendant is unable to segregate what might be potentially permissible deductions from impermissible deductions and thus violated the FLSA's minimum wage requirement. *See Veterans Cleaning Serv., Inc.*, 482 F.2d at 1370. Therefore, Ettorre moves for summary judgment against Defendant based upon unlawfully deducting the $10 linen fee from Ettorre's wages.

### i. EVEN IF THE "LINEN FEE" WAS LAWFUL, DEFENDANT STILL VIOLATED THE TIP CREDIT BECAUSE IT DEDUCTED MORE THAN THE REASONABLE COST.

The term "reasonable cost" as defined in Section 3(m) of the Act is no more than the actual cost to the employer of the board, lodging, or other facilities that are furnished by the employer to the employee. 29 C.F.R. §531.3(a). The Act prohibits an employer's attempt to make a profit on anything sold to the employee. *See Veterans Cleaning Serv., Inc.*, 482 F.2d at 1370; *See also, Solis v. Lorraine Enterprises*, 907 F. Supp. 2d 186, 190 (D.P.R. 2012) (while a meal is considered to be part of board, lodging, or other facilities, an employer may only charge the actual cost of the meal provided to the employee and may not make a profit on the meal).

Employers must keep individual employee records of "the dates, amounts, and nature of the items which make up the total additions and deductions" from an employee's wages. 29 C.F.R. § 516.2(a)(10); *Nail*, 2019 U.S. Dist. LEXIS 132072, at *22 (holding that in order for an employer to offset "meals" it provided against uniform deductions, "employer must provide records maintained on a weekly basis . . . for these meals.") (citing 29 C.F.R. §§ 516.27 and 516.28(b)).

Defendant claims that in addition to covering the cost of laundering Ettorre's apron, the deduction covered Defendant's expense of providing employees with unlimited beverages during their shift. *See* Ex E (Depo of Corp. Rep.) App. 44:17-22, and App. 49:8-22; *See also* Ex F (Depo of Chiara Ettorre) App. 67 at page 27:9-18. Crucially, however, Defendant admits that it cannot substantiate its cost of laundering Ettorre's apron or the cost of providing Ettorre with fountain drinks:

> "Q. Assuming the invoices do separate the amounts of the aprons from the other items that the restaurant has cleaned, is there a way to figure out how much of that cost would be attributed to Ms. Ettiore?
> **A. *No.***"

*See* Ex E (Depo of Corp. Rep.) App. 47:6-10 (emphasis added)

> ***Q. Did the company keep track of the number of beverages that Ms. Ettiore consumed?***
> ***A. I don't know.***
> ***Q. You don't know whether if there is any records that the company kept?***
> A. I haven't seen them..
> Q. I'm not asking if you seen them I'm asking --
> A. -- they do not.
> ***Q. They do not; correct?***
> ***A. Correct.***
> ***Q. Do you know whether Ms. Ettiore ever drank a***
> ***beverage during her employment?***
> ***A. I can't say.***

*See* Ex E (Depo of Corp. Rep.) App. 50:2-14. (emphasis added). In fact, Ettorre rarely consumed fountain drinks during her employment with Defendant. *See* Ex D (Ettorre Declaration) App. 29 ¶ 6 ("I almost always drank water during my shifts, because I cut fountain drinks out of my diet."); Ex F (Depo of Chiara Ettorre) App. 67 at page 27:9-18 ("I usually drank water.").

Even if Defendant could segregate the deduction for the cost of laundering Ettorre's apron from the cost of providing fountain drinks to Ettorre, which it cannot, Defendant is unable to substantiate the cost it incurred to launder Ettorre's apron or the cost of fountain drinks Ettorre consumed. *See Yu G. Ke v. Saigon Grill, Inc.*, 595 F. Supp. 2d 240, 257 (S.D.N.Y. 2008) (rejecting

employers attempt to offset a deduction with the cost of employer provided meals because the employer could not prove the costs of the meals it provided to employees.); *Nail*, 2019 U.S. Dist. LEXIS 132072, at *26 (rejecting employer's attempt to offset the unsubstantiated cost of "meals" it provided to employee against uniform deductions court stated, "importantly, due to an absence of records or even an averment, there is no evidence cited that the meals were received by the Plaintiffs at issue."); *Dole v. Bishop*, 740 F. Supp. 1221, 1227 (S.D. Miss. 1990) ("[A]n employer's unsubstantiated estimate of his cost, where the employer has failed to comply with the recordkeeping provisions of the FLSA, and where there has been no determination of reasonable cost by the Wage and Hour Division, does not satisfy the employer's burden of proving reasonable cost") (*citing Donovan v. New Floridian Hotel, Inc.*, 676 F.2d 468, 475 (11th Cir. 1982)); *Shultz*, 432 F.2d at 261 (holding that where employer fails to keep records, burden is on employer to "disprove" evidence that the employees were improperly compensated).

Defendant deducted the same amount from Ettorre's wages every pay period even during pay periods when Ettorre worked a reduced schedule and therefore did not consume beverages during those shifts or use an apron. *See* Ex C (Def's Payroll Records) App. 8, 13-14, and 18. Nevertheless, Defendant always deducted the same ten dollars ($10) from each of her paychecks.

> ***Q.*** *But she **always** had the **full $10 deducted** from her paycheck?*
> ***A. Yes***

Ex E (Depo of Corp. Rep.) App 50:15-17. (emphasis added); *see also* Ex C (Def's Payroll Records) App. 8-10. Therefore, even if a portion of the "linen fee" was allocated to compensate Defendant for fountain drinks that were made available to Ettorre, but for which she rarely consumed, Defendant is unable to separate the amount of the deduction that was for linens and the amount that was attributed to fountain drinks. *See Veterans Cleaning Serv., Inc.*, 482 F.2d at 1370 (holding that where employer failed to record and segregate permissible deductions from impermissible

16

deductions, all deductions were held to be impermissible deductions from wages under the FLSA.); *Nail*, 2019 U.S. Dist. LEXIS 132072, at \*22 (holding that in order for an employer to offset "meals" it provided against uniform deductions, "employer must provide records maintained on a weekly basis . . . for these meals.") (citing 29 C.F.R. §§ 516.27 and 516.28(b)).

Here, by Defendant's own admission, Defendant cannot even provide an *unsubstantiated* estimate of how it arrived at the decision to deduct $10, much less provide evidence substantiating the amount of its cost to launder Ettorre's aprons or provide Ettorre with fountain drinks. *See* Ex E (Depo of Corp. Rep.) App. 57:22-25 (testifying that Defendant does not know the cost of providing fountain drinks to Ettorre); *Id.* at App. 55:2-15 (testifying, "I don't know," when asked how Defendant arrived at $10 as the amount for the deduction).

## C.   DEFENDANT CANNOT PROVE IT ACTED IN GOOD-FAITH

Defendant cannot prove it acted in good-faith and on reasonable grounds in determining that its compensation practices were lawful. As such, Defendant is liable for liquidated damages.

An employer typically must pay liquidated damages for violations of the FLSA. 29 U.S.C. § 216(b); *Riddle v. Tex-Fin, Inc.*, 2011 U.S. Dist. LEXIS 29863, 2011 WL 1103033, at \*4 (S.D.Tex. Mar. 22, 2011) (In determining the amount of liquidated damages, there is a strong presumption in favor of doubling the damage award) (citing *Nero v. Indus. Molding Corp.*, 167 F.3d 921, 929 (5th Cir. 1999)). The employer has the "plain and substantial burden" of proving that its violation was both in good faith and objectively reasonable. *Barcellona*, 597 F.2d at 468. This burden "is a difficult one to meet," and awards of liquidated "damages are the norm, single damages the exception..." *Walton v. United Consumers Club, Inc.*, 786 F.2d 303, 310 (7th Cir.1986). "Good faith in this context requires more than ignorance of the prevailing law or uncertainty about its development. It requires that an employer first take active steps to ascertain

17

the dictates of the FLSA and then move to comply with them." *Tran v. Thai*, 2010 WL 5232944 at *6 (S.D. Tex. 2010) (citations omitted).

To avoid liquidated damages, an employer must prove that the act or omission giving rise to the FLSA violation was made in good faith and on reasonable grounds for believing it was not a violation. 29 U.S.C. § 260; *see Barcellona*, 597 F.2d at 469 ("good faith requires some duty to investigate potential liability under the FLSA.") (citations omitted); *Singer v. City of Waco*, 324 F.3d 813, 823 (5th Cir. 2003) ("We have held that an employer faces a 'substantial burden' of demonstrating good faith and a reasonable belief that its actions did not violate the FLSA.") (internal quotes omitted) (citations omitted).

Here, Defendants cannot meet the substantial burden to avoid liquidated damages. There is no evidence that Defendant took any affirmative efforts to consult with counsel, the Department of Labor, or any other source of authority to determine whether their compensation practices complied with the FLSA. Defendant testified that it did not consult any authorities concerning the legality of taking the $10 deduction from Ettorre's wages. *See* Ex E (Depo of Corp. Rep.) App 58:1-21. Therefore, Defendant cannot show a good faith or reasonable ground for its compensation policies, and as such must be held liable for liquidated damages as required under the FLSA. Ettorre moves for summary judgment as to her entitlement to liquidated damages as a matter of law based upon Defendant's failure to comply in good faith with the FLSA.

## V.   CONCLUSION

It is undisputed that Defendant paid Ettorre an hourly wage of $2.13 per hour, which is less than the federally mandated minimum wage rate of $7.25 per hour. Defendant cannot satisfy its burden of establishing its entitlement to the Section 3(m) tip credit as an affirmative defense to the payment of minimum wage because Defendant cannot demonstrate that Ettorre was notified of the

FLSA tip credit provision and that Ettorre was allowed to retain all tips. Moreover, Defendant is unable to identify any records substantiating its cost estimate for either of the purported purposes for the linen fee deduction. As in *Veterans Cleaning Services*, the Defendant is unable to segregate impermissible purposes for the single deduction from potentially permissible purposes. 482 F.2d at 1370. Therefore, the linen fee deduction should be rendered impermissible in its entirety. *Id.* Ettorre moves for summary judgment based upon Defendant's inability to meet the requirements of the tip credit. *See Smith v. Noso, Inc.*, 2007 WL 2254531, at *4 (M.D. Fla. 2007) ("Unless the employer satisfies its burden of showing the applicability of the tip credit, the employees are 'entitled to the full minimum wage for every hour worked.'") (*citing Barcellona*, 597 F.2d at 467).

Finally, Defendant cannot meet its substantial burden to avoid the imposition of liquidated damages as a matter of law. Defendants have not, and cannot, offer any evidence supporting a justification for its compensation practices.

For the foregoing reasons, there are no genuine issues of material fact that Defendant paid Ettorre less than minimum wage, that Defendant has failed to establish its entitlement to the FLSA tip credit, and that Defendant cannot prove a good-faith defense to the imposition of liquidated damages. Therefore, Ettorre respectfully requests the Court to enter judgment as a matter of law against Defendant on liability as to the claims and affirmative defenses set forth above.

Respectfully submitted,


By: */s/ Drew N. Herrmann*
        Drew N. Herrmann
        Texas Bar No. 24086523
        SDTX Federal ID No. 3050726
        drew@herrmannlaw.com
        **HERRMANN LAW, PLLC**
        801 Cherry St., Suite 2365
        Fort Worth, Texas 76102

19

Phone: (817) 479-9229
Fax: (817) 887-1878

-AND-

Douglas B. Welmaker
Texas Bar No. 00788641
SDTX Federal ID No. 17038
doug@morelandlaw.com
**MORELAND VERRETT, PC**
2901 Bee Cave Rd, Box L
Austin, Texas 78746
Phone: (512) 782-0567
Fax: (512) 782-0605

ATTORNEYS FOR PLAINTIFF

CERTIFICATE OF SERVICE

I certify that on September 3, 2019, the above document and exhibits will be served on Defendant's attorney of record via CM/ECF.

/s/ Drew N. Herrmann
Drew N. Herrmann

20