UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **CHIARA ETTORRE,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:19-CV-00245 |
| | § | |
| **RUSSO'S WESTHEIMER, INC.,** | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER

In this Fair Labor Standards Act dispute, Chiara Ettorre has prevailed on the merits and received a judgment award of $99,398.00 against Russo's Westheimer, Inc. ("Russo's")—a sum which reflects the underlying claims, attorneys' fees, costs and litigation-related expenses. (Dkt. No. 54); (Dkt. No. 65). The Fifth Circuit has already affirmed the judgment in all respects, (*see* Dkt. No. 72), so the only remaining step is satisfaction of the judgment. The problem is, Ettorre has been unable to collect from Russo's.

Pending before the Court is Ettorre's Motion for Turnover after Judgment and Appointment of Receiver and Master. (Dkt. No. 76). Ettore requests the appointment of a receiver and master as well as the turnover of certain property of Russo's in order to facilitate payment. After careful consideration, the Motion is **GRANTED**.

**I.    BACKGROUND**

The events giving rise to this lawsuit have been summarized on multiple occasions—first by Judge Lynn Hughes on partial summary judgment before

reassignment to this Court, and then by the Fifth Circuit on appeal—and will not be rehashed in detail here. (Dkt. No. 44); (Dkt. No. 72). After the Fifth Circuit affirmed the judgment, Ettorre moved to compel post-judgment discovery responses because Russo's "wholly failed to satisfy the Judgment against it and has further failed to respond to [Ettorre]'s post-judgment discovery requests." (Dkt. No. 73 at 1). Judge Hughes granted that motion and directed Russo's to respond. (Dkt. No. 74). In her present Motion, Ettorre informed the Court that Russo's did serve responses, but those responses were over a month late and "so inconsistent, incomplete, and evasive [that] it is as if [Russo's] did not respond at all." (Dkt. No. 76 at 2, ¶ 7). Ettorre states that the present Motion is necessitated by Russo's, who refuses to pay her despite being financially able. (*Id.* at 2, ¶ 8). Particularly, she believes that Russo's, despite being in good financial standing, has been hiding its assets and moving them around to evade collection efforts. (*See id.* at 2–3, ¶¶ 9–11).

## II.   APPLICABLE LAW

The Federal Rules of Civil Procedure provide that a federal court may enforce a money judgment consistent "with the procedure of the state where the court is located[.]" Fed. R. Civ. P. 69(a)(1); *see also* Fed. R. Civ. P. 64 ("[T]hroughout an action, every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment."). The inquiry, then, begins with the Texas turnover statute.

A.     THE TEXAS TURNOVER STATUTE

Section 31.002 of the Texas Civil Practice and Remedies Code "is the procedural device by which judgment creditors may reach assets of a debtor that are otherwise difficult to attach or levy on by ordinary legal process." *Santibanez v. Wier McMahon & Co.*, 105 F.3d 234, 239 (5th Cir. 1997) (cleaned up).  The statute provides that a judgment creditor "is entitled to aid from a court of appropriate jurisdiction" in order to reach a judgment debtor's property in furtherance of satisfying a judgment.  Tex. Civ. Prac. & Rem. Code § 31.002(a).  The statute reaches "only the assets of parties to the judgment," *see Bollore S.A. v. Imp. Warehouse, Inc.*, 448 F.3d 317, 322 (5th Cir. 2006) (citations omitted), and those assets must not be exempt from attachment, execution, or seizure.[1]  Tex. Civ. Prac. & Rem. Code § 31.002(a).

District courts enjoy broad discretion in issuing turnover orders, and such orders, "even if predicated on an erroneous conclusion of law, will not be reversed for abuse of discretion if the judgment is sustainable for any reason." *Santibanez*, 105 F.3d at 239 (cleaned up) (citations omitted).  The Texas turnover statute provides different avenues for the Court to assist in satisfying the debtor's liabilities, among which is to "appoint a receiver with the authority to take possession of the nonexempt property, sell it, and pay

---

[1]     The Court notes that while Section 31.002(a) previously additionally required that the property "cannot readily be attached or levied on by ordinary legal process," the statute as amended in 2017 no longer includes this requirement.  *Compare* Tex. Civ. Prac. & Rem. Code § 31.002(a) (2019) *with* Tex. Civ. Prac. & Rem. Code § 31.002(a) (2015).  Therefore, while pre-amendment cases cite this criterion, the Court finds that its omission signals that it has been abandoned through legislation.  *See, e.g.*, *Santibanez*, 105 F.3d at 238 (referencing the pre-amendment criterion); *Bollore*, 448 F.3d at 322 (same).

3

the proceeds to the judgment creditor to the extent required to satisfy the judgment." Tex. Civ. Prac. & Rem. Code § 31.002(b)(3).

### B. THE APPOINTMENT OF A RECEIVER

A receiver is "[a] disinterested person appointed by a court . . . for the protection or collection of property that is the subject of diverse claims." Receiver, Black's Law Dictionary (11th ed. 2019). The appointment of a receiver is a procedural matter governed by federal law and federal equitable principles. *See Nat'l P'ship Inv. Corp. v. Nat'l Hous. Dev. Corp.*, 153 F.3d 1289, 1291–92 (11th Cir. 1998) (explaining that the appointment of a receiver in equity is not a substantive right). Receivers may be appointed "to preserve property pending final determination of its distribution in supplemental proceedings in aid of execution." *Santibanez*, 105 F.3d at 241 (quotations omitted). They may also be appropriate where a judgment creditor "seeks to set aside allegedly fraudulent conveyances by the judgment debtor," "had execution issued and returned unsatisfied," "proceeds through supplementary proceedings pursuant to Rule 69," "seeks to subject equitable assets to the payment of his judgment," or "is attempting to have the debtor's property preserved from dissipation until his claim can be satisfied." *Id.* (citations omitted).

Under Rule 66 of the Federal Rules of Civil Procedure, appointment can be sought "by anyone showing an interest in certain property or a relation to the party in control or ownership thereof such as to justify conservation of the property by a court officer." *Id.* (quoting 7 James Moore *et al.*, Moore's Federal Practice ¶ 66.05[1] (2d. ed.1996)). Like turnover orders, the appointment of a receiver is in the sound discretion of the court, *id.*,

4

and the evidence required on a motion requesting the appointment of a receiver "is a matter of judicial discretion." *Id.* (citing 12 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 2983 (1973)). Courts typically consider several factors in determining whether there is a need for a receiver, including:

1) whether there exists a valid claim by the party seeking the appointment;

2) the probability that fraudulent conduct has occurred or will occur;

3) the likelihood of imminent danger that property will be concealed, lost, or diminished in value;

4) the inadequacy of legal remedies;

5) the lack of a less drastic equitable remedy; and

6) the likelihood that appointing the receiver will do more good than harm.

*Santibanez*, 105 F.3d at 241–42 (citing *Aviation Supply Corp. v. R.S.B.I. Aerospace, Inc.*, 999 F.2d 314, 316–17 (8th Cir. 1993)).

C.     THE APPOINTMENT OF A MASTER IN CHANCERY

A master in chancery is "[a]n officer appointed by a court of equity to assist the court." Master in Chancery, Black's Law Dictionary (11th ed. 2019). Texas law prescribes that an appointment of a master in chancery is appropriate "in exceptional cases, for good cause." Tex. R. Civ. P. 171. Masters in chancery "have such power as the master of chancery has in a court of equity, including the power to hold hearings, require the production of evidence, rule upon the admissibility of evidence, and examine witnesses." *State Farm Mut. Auto. Ins. Co. v. Wilkins*, No. CIV.A. H-99-2822, 2008 WL 2961344, at *4 (S.D. Tex. July 28, 2008) (internal quotations omitted) (citing Tex. R. Civ. P. 171). A trial court's decision to appoint a master should be upheld absent "a clear abuse of [its]

5

discretion." *Simpson v. Canales*, 806 S.W.2d 802, 811 (Tex. 1991). While the criterion for appointing a master "is not susceptible of precise definition," a mere showing that a case is time-consuming or complicated will not warrant appointment. *Id.*

## III.    DISCUSSION

In her Motion, Ettorre hurls serious accusations at Russo's. She claims that despite the position by Russo's that it is unable to pay, its supposed inability is really a refusal to pay. (Dkt. No. 76 at 2, ¶ 8). She asserts that Russo's is hiding its assets and income, moving them "around like a shell game" in an effort to frustrate collection efforts. (*Id.* at 2–3, ¶¶ 10–11). The Court will first assess whether there is any basis in the record for these allegations, and then will evaluate whether turnover and appointment of a receiver and master is warranted.

### A.    WHETHER RUSSO'S IS HIDING ITS ASSETS

Ettorre argues that beyond mere suspicion, the behavior of Russo's "*presumes fraudulent activity*[.]" (Dkt. No. 79 at 3) (emphasis added). She points to various patterns and documents that support this inference[2]:

- For the sixteen consecutive months before the Fifth Circuit's affirmation judgment, from September, 2020 to January, 2022, Russo's deposited more than $100,000 every month into its bank account; however, following the March, 2022 judgment from the Fifth Circuit, Russo's made zero deposits for April, and only $45.86 the following month. (Dkt. No. 79 at 3). This behavior, Ettorre says, "suggests that [Russo's] is depositing funds into other accounts." (*Id.* at 3–4).

- As of January, 2022, the bank account of Russo's had a balance of $50,584.21. The following month, that balance became $0.20. (*Id.* at 4).

---

[2]    The matters discussed by Ettorre in her Reply reference and highlight portions of the bank statements that she filed as a separate docket entry, the Appendix. (*See* Dkt. No. 80).

6

- In February, 2022, Russo's "drafted a flurry of checks that were highly irregular in number, amount, and explanation." (*Id.*). As Ettorre points out, the substance of these payments is highly suspicious in light of the representation by Russo's that it has no money due to rapid financial deterioration. For example, Russo's paid $33,000 in February, 2020, making sudden payments for landscaping, sign fabrication, and market consultation.

- By May, 2022, the account of Russo's had a negative balance of $2,866.43. (*Id.* at 5).

Ettorre argues that the only possible explanation for this sudden drastic shift in the financial status of Russo's is that it is using hidden accounts. (*Id.*).

B. **WHETHER CIRCUMSTANCES WARRANT THE REQUESTED RELIEF**

The Court finds that a turnover order, and the appointment of a receiver, is warranted in this case. As an initial matter, Russo's has not provided a list of its assets, much less established that all, or even any, of its assets are exempt. The appointment of a receiver to take possession of any non-exempt property, sell it, and pay the proceeds to the judgment creditor is appropriate in light of what appears to be fraudulent conduct. Having considered Ettorre's briefing, including the patterns in the bank statements, the Court agrees that something is seriously amiss. Ettorre says there is no plausible explanation other than fraud as to how a business that had been financially secure and generating sizeable revenue, even during the pandemic, suddenly lost that security and revenue generating capacity virtually immediately after realizing that it must satisfy a substantial monetary judgment. In a similar case, the district court appointed a receiver where the judgment debtor offered "inconsistent and evasive accounts," finding that the "sketchy" behavior favored appointment of a receiver. *Wilkins*, 2008 WL 2961344 at *6.

The enumerated considerations endorsed in *Santibanez* each weigh in favor of appointing a receiver. 105 F.3d 234 at 241–242 (citing *Aviation Supply Corp.*, 999 F.2d at 316–17. Ettorre undoubtedly has a valid claim against Russo's, having received a judgment that has been affirmed on appeal. (Dkt. No. 72). Based on records of the financial dealings of Russo's, fraud has almost certainly occurred, and as explained by another court that similarly granted a receiver, "[a]s defendant continues to liquidate, transfer, and encumber assets, there is an imminent danger that property will be concealed, lost, or diminish in value." *World Fuel Servs. Corp. v. Moorehead*, 229 F. Supp. 2d 584, 597 (N.D. Tex. 2002). In *Wilkins*, an insurance company attempted to collect on a judgment against an attorney who organized and implemented an insurance fraud scheme. 2008 WL 2961344 at *1. Like in *Wilkins*, legal remedies are inadequate here, and there does not appear to be a less drastic remedy for Russo's to satisfy the judgment when Russo's, by all appearances, seems determined to do the opposite. *Id.* at *6. Finally, while appointing a receiver ostensibly would facilitate a faithful execution of the judgment, there is no reason to believe that it would bring harm, let alone harm that would outweigh the good.

The appointment of the receiver as a master in chancery is also appropriate. This case is exceptional because the assets of Russo's are unidentified, and the evasive and likely fraudulent dealings by Russo's up to this point indicate that absent employing the powers of a master, Russo's would be more likely to 1) continue to try to hide its assets, and 2) succeed in that endeavor. Only if the receiver has the power to hold hearings, require evidence production, and examine witnesses, will Ettorre likely be able to identify

the assets necessary to satisfy the judgment. Similar to *Wilkins*, wherein the court found "exceptional circumstances" and "good cause" to appoint the receiver as a master in chancery in light of the debtor's "inconsistent and evasive accounts," *id.* at 6, the present facts suggest tactics by Russo's that likewise merit appointment of a master in chancery in accordance with Rule 171 of the Texas Rules of Civil Procedure.

## IV.     ATTORNEYS' FEES

Ettorre further seeks recovery of attorneys' fees and costs incurred in filing this turnover proceeding. In the context of collecting a judgment through court proceedings, when aid such as turnover and appointment is sought, "[t]he judgment creditor is entitled to recover reasonable costs, including attorney's fees." Tex. Civ. Prac. & Rem. Code § 31.002(e). Trial courts have discretion as to whether to award attorneys' fees in a turnover proceeding, *Moorehead*, 229 F. Supp. 2d at 598 (citing *Thomas v. Thomas*, 917 S.W.2d 425, 436 (Tex. App.—Waco 1996, no writ)), and the present circumstances favor them. This motion was necessitated, by all appearances, by the efforts of Russo's to evade satisfaction of the judgment. The amount in controversy is significant, the grant of the turnover and receiver motion turns on nuanced legal issues, and it is clear that Ettorre's counsel performed a thorough review of hundreds of pages of bank records, in addition to briefing legal arguments.

Ettorre will be awarded reasonable attorneys' fees and costs incurred in these post-judgment proceedings. Ettorre may file an application for fees and costs within 14 days of entry of this order.

## V.     CONCLUSION

For the reasons discussed, Ettorre's Motion for Turnover after Judgment and Appointment of Receiver and Master, (Dkt. No. 76), is **GRANTED**. An order for turnover of property and for appointment of a receiver and master will be separately entered.

It is SO ORDERED.

Signed on June 10, 2023.

                                                           **DREW B. TIPTON**
                                       **UNITED STATES DISTRICT JUDGE**